**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arthur R. JOHNSON, a/k/a Marcus
Fuller, Defendant–Appellant.**

**No. 94–2642.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1994.

Decided May 4, 1995.

Barry Rand Elden, Asst. U.S. Atty. and Kaarina Salovaara (argued), Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

J. Burk McNamara (argued), Crystal Lake, IL, for defendant-appellant.

Before REAVLEY,* FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Arthur Johnson, now 65 years old, has had much experience with the criminal justice system. Although a full recitation of his criminal history would unnecessarily extend this opinion, we relate a bit of it to set the stage for our discussion. As a juvenile, Johnson was arrested three times for automobile theft, stemming from "joy rides." At age 18, he twice was convicted of tampering with an automobile and sentenced to one year probation and 30 days in the House of Corrections, respectively. At age 21, he was convicted of taking indecent liberties with a child. For that crime he spent 11½ years in the state correctional system in Illinois. At age 37, Johnson was found guilty of unlawful use of a weapon and aggravated assault, both occurring during a domestic dispute. At age 38, Johnson pled guilty to a spree of armed robberies and to attempted murder. For

---

* The Honorable Thomas M. Reavley, of the Fifth Circuit, sitting by designation.

these crimes he spent four years and eight months in the Illinois state correctional system. At age 49, Johnson pled guilty to numerous weapons charges and possession of stolen mail and served approximately one year in the Federal Correctional Institution at Oxford, Wisconsin. A week before his 57th birthday, he pled guilty to unlawful use of a weapon by a felon and spent 90 days in jail. In total, Johnson has spent 18 years and five months, almost one-third of his life, in custody.

In March 1992, Johnson was charged, once again, with the unlawful possession of a firearm by a felon. The case went to trial in August 1993, and the jury deadlocked. Judge Zagel declared a mistrial and set the case for retrial on January 4, 1994. Prior to that time, the government and Johnson entered into a Rule 11(e)(1)(C) plea agreement. Under the agreement, Johnson was to plead guilty to knowingly and intentionally using a telephone to commit a drug offense, a violation of 21 U.S.C. § 843(b), in exchange for the government dropping the original weapons charge. The parties also agreed, preliminarily, that for sentencing purposes Johnson's base offense level was 16, and an increase of two levels for possession of a weapon and a decrease of two levels for acceptance of responsibility was appropriate. The parties also agreed that, pursuant to United States Sentencing Guidelines (U.S.S.G.) § 4B1.1, Johnson was a Career Offender and his criminal history category was VI. Under these calculations, the sentencing range under the guidelines was 46 to 57 months. The government agreed to recommend to the judge a 48 month sentence.

On February 9, 1994, the parties presented the plea agreement to the court. The court accepted Johnson's guilty plea and referred the matter to a probation officer to prepare a Presentence Investigation Report (PSR). Toward the end of that hearing, and before accepting his guilty plea, the court warned Johnson that if he pled guilty the court would sentence him to the agreed 48 months or, if the probation officer calculated a sentencing range below 48 months, he would be sentenced to "the highest sentence that's permissible under the guidelines."

The PSR, presented by the probation officer on May 2, 1994, concurred with the calculation of Johnson's Offense Level at 16, but disagreed with the parties' Criminal History calculation. Because many of Johnson's prior convictions were entered more than fifteen years before this action commenced, they could not be used to calculate his Criminal History Category. See U.S.S.G. § 4A1.2(e). Thus, the probation officer calculated Johnson's Criminal History points at 6, corresponding to a Criminal History Category of III. This led to a guidelines range of 27 to 33 months. The probation officer also noted that the judge may consider departing upward under U.S.S.G. § 4A1.3.

Because the 48 month sentence that the parties agreed to was not within the guidelines range that the probation officer calculated, the court held a hearing on May 19, 1994 to determine what to do next. At that hearing, Johnson's counsel argued that the court should "specifically enforce" the plea agreement, as modified by the court's statement to Johnson that is quoted above: in other words, sentence Johnson to 33 months. The government argued that specific enforcement was not the proper remedy, but rather Johnson should be allowed either to withdraw his guilty plea or to proceed with sentencing. The court continued sentencing to give the parties time to continue plea negotiations and for Johnson to consult with counsel.

On June 28, 1994, the court proceeded with sentencing. Judge Zagel denied Johnson's request for a 33 month sentence, determining that Johnson's remedy was to have an opportunity to withdraw his plea. See FED. R.CRIM.P. 11(e)(4). Johnson declined to withdraw his guilty plea. The court then sentenced Johnson. Starting from the PSR's Guidelines calculations, the court departed upward four points, to a Criminal History Category of V. When combined with an Offense Level of 16, the applicable sentencing range was 41 to 51 months, and the court imposed a sentence of 48 months.

### Timing of Sentencing

Johnson first argues that during the February 9th status hearing, Judge Zagel

accepted the 48 month sentence recommended in the Plea Agreement and effectively sentenced Johnson to that term before requesting and receiving a PSR, in violation of U.S.S.G. § 6B1.1(c). Johnson did not raise this issue with the District Court and has forfeited the argument. *United States v. Mustread,* 42 F.3d 1097, 1107 (7th Cir.1994). We therefore review for plain error. *Id.* Section 6B1.1(c) states,

> The court shall defer its decision to accept or reject any nonbinding recommendation pursuant to Rule 11(e)(1)(B), and the court's decision to accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report, unless a report is not required under § 6A1.1.

Both parties admit that a presentence report was not excused under § 6A1.1; just the opposite—the judge ordered that one be prepared.

The plain fact is that the district judge most certainly did not sentence Johnson during the February hearing. At that hearing, the parties presented the district court with the plea agreement. Judge Zagel asked Johnson questions to determine whether he understood and voluntarily waived his right to trial by jury. The court and counsel had a colloquy on what the effect would be if the probation officer calculated a sentencing range that fell below the agreed 48 month sentence. The court then explained to Johnson the resolution of the issue:

> THE COURT: Mr. Johnson, what this now amounts to is I'm going to assign this to a probation officer and the probation officer is going to figure out what the guidelines are. If the figure 48 months—if the 48–month sentence is within the guidelines, that's the sentence I'm *going* to impose upon you. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: If by some chance the highest sentence in the guidelines range is below 48 months, then I *will* impose the highest sentence that's permissible under the guidelines. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(Emphases supplied). Thus the court clearly indicated to Johnson the consequences of pleading guilty. Only after advising Johnson of the potential sentencing outcome did the trial judge accept Johnson's guilty plea. The court did not impose the sentence until the sentencing hearing on June 28, 1994, after reviewing the PSR. Not only was there no plain error, it was a classic example of careful sentencing procedures carried out by an experienced trial judge.

### Burns Notice

■ Johnson argues that he was not put on notice of the possibility that the court would depart upward in sentencing him. Johnson also failed to raise this issue below, and thus we review for plain error. In *Burns v. United States,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), the Supreme Court held that a defendant must receive notice, by either the PSR, the prosecution's motions or the court *sua sponte,* of the possibility that the court will depart upward during sentencing. *Id.,* 501 U.S. at 138–39, 111 S.Ct. at 2187; *see also United States v. Jackson,* 32 F.3d 1101, 1106 (7th Cir.1994) (majority not deciding whether *Burns* departure notice requirement also applies to adjustments); *United States v. Saunders,* 973 F.2d 1354, 1364 (7th Cir.1992) (holding that a recommendation for an upward departure in a PSR puts the defendant on notice); *United States v. Thomas,* 969 F.2d 352, 356–57 (7th Cir.1992) (holding that the government's statement at a status hearing about the defendant's other relevant conduct and the possibility that it could support an upward adjustment was sufficient to put the defendant on notice); *United States v. Andruska,* 964 F.2d 640, 644 (7th Cir.1992) (applying *Burns* to the court's failure to notify the government of intent to depart downward). Such "notice must specifically identify the ground on which the district court is contemplating an upward departure." *Burns,* 501 U.S. at 138–39, 111 S.Ct. at 2187. Johnson claims he received no notice from any of these three sources.

The record reveals, however, that he received varying degrees of notice from all three sources—plenty to hold that the *Burns* requirement has been fulfilled. The PSR

alone would have satisfied *Burns*. The last page of the PSR stated that an upward departure may be appropriate for two reasons: 1) that Johnson's calculated criminal history category may underrepresent the seriousness of his past criminal conduct because a number of past convictions were not used in the calculation, and 2) that, for the same reason, Johnson's criminal history category may underrepresent the likelihood of recidivism.[1]

Johnson appears to argue that the PSR was insufficient notice for two reasons, neither of which have merit. First, he argues that notice was not specific enough. We cannot imagine how the PSR could have been more specific; it cited book, chapter and verse. The PSR cited the appropriate Guidelines section, it detailed the exact grounds for the departure, and it referred to facts to support the grounds (the prior convictions, which were itemized in exacting detail in the same document).

Johnson also argues that, because the PSR did not formally recommend the departure, but rather only suggested that departure may be appropriate, it was insufficient notice. This argument is spurious. Whether the Probation Officer labeled her discussion as a recommendation makes no difference; the defendant was aware of the potential for an upward departure because "the issue was flagged for the defense." *United States v. Thomas*, 969 F.2d 352, 357 (7th Cir.1992).

Moreover, during the May 19th status hearing, the court alerted Johnson of the potential for an upward departure. The court held the hearing because the 48 month sentence to which the government and Johnson agreed exceeded the range determined in the PSR. The parties and the court discussed what actions to take because of this incongruity. The prosecutor informed the judge that the government and the defendant planned to continue plea discussions. In response, the court stated, "Well, obviously if you can work this out, it's better for me for one reason and one reason only, and that is we are now at 16 three [referring to Johnson's offense level and criminal history category]. Assuming there were no problem or no difficulty of any kind, you [the prosecutor] will argue to me, I presume, that *the adequacy of the criminal history is understated.*" (Emphasis added). Additionally, the government's sentencing memorandum stated, "the government shall ask the Court to make a four level upward departure with respect to defendant's criminal history."

Johnson received adequate notice of the potential for an upward departure. The notice in the PSR was certainly sufficient and we need not decide whether, absent the PSR's notice, the references by the judge and the government alone would constitute the notice required by *Burns*.

### Upward Departures

 Finally, Johnson attacks the substance of the district court's decision to depart upward. In reviewing a district court's decision to depart upward in sentencing, we apply a three part examination: 1) as a matter of law, were the stated grounds for the departure proper; 2) were the district court's factual findings underlying the departure clearly erroneous; and 3) was the degree of departure reasonable. *See United States v. Sarna*, 28 F.3d 657, 661 (7th Cir.1994); *United States v. Seacott*, 15 F.3d 1380, 1386 (7th Cir.1994); *United States v. Williams*, 901 F.2d 1394, 1396 (7th Cir.1990). The district court twice departed upward two points—once because Johnson's criminal history category did not adequately reflect the serious-

---

1. The last page of the PSR states,
 **FACTORS THAT MAY WARRANT DEPARTURE:** ...
 Pursuant to 4A1.3, the court may consider imposing a sentence departing from the otherwise applicable guideline range if reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. Such information may include prior sentences not used in computing the criminal history category. The court may, after review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category and, therefore, consider an upward departure from the guidelines.

ness of his past criminal conduct and again because of the likelihood of recidivism.[2]

Johnson does not contest the court's factual findings; the court relied on the previous convictions described in the PSR. Instead, Johnson claims first that the district court relied on two grounds that are impermissible—age (*see* U.S.S.G., Ch. 4, Pt. A, Introductory Comment) and the mistrial in Johnson's first trial. Johnson is correct that these two grounds are impermissible considerations; but the court did not rely on them. The district court did mention "the equities involved in this case," referring to the mistrial, but then stated that this could not influence the appropriate sentence. As·for age, the district court, in a round about way, referred to Johnson's age when discussing his long criminal history. But the court did this only to explain its upward departure on the two grounds it *did* rely on: that the

criminal history category inadequately reflected the seriousness of Johnson's past criminal activities and the chances that Johnson would commit crimes in the future, both of which·are appropriate grounds for an upward departure. U.S.S.G. § 4A1.3.

Johnson also contends that the court did not adequately articulate the reasons for the· departures, citing our decision in · *United States v. Scott*, which stated that "a decision to depart from the guidelines must be supported by ·articulable reasons." 914 F.2d 959, 963–64 (7th Cir.1990) (internal quotations · omitted).[3] His argument is baseless. The court clearly explained that the PSR's calculation of Johnson's criminal history category took into account only three of his sixteen prior convictions and therefore understated the seriousness of his past.criminal history.[4] The court also stated that it was

2. At the sentencing hearing on June 28th, the court stated:

> THE COURT: Okay. Let me tell you that if I were to consider the equities involved in this case, that the decision is quite simple. The defendant in this case by virtue of two jurors who decided to hold out would have been convicted for an offense which carried, I think, either a mandatory minimum of 10 to 15 years. And I think that equity takes into account the defendant's luck.
>
> But we don't apply equitable principles in sentencing. We apply legal ones. And since the guidelines have occurred, we apply much more law than we used to. So all I am left with is whether this is an appropriate departure, and essentially departure on the grounds of criminal history is permissible if I find that the criminal history category does not adequately reflect *the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes.*
>
> I think departure's called for on both grounds here. This is a defendant who was convicted some 16 times of 16 convictions. Because of a variety of rules in the guidelines, I believe only three of them counted in the calculations. So I believe it significantly understates his history, and for that reason I am inclined to depart upward for two points.
>
> But I'm also going to depart and add an additional two points to take this to criminal history category five not only because there are 16 convictions, but because this individual beginning at the age of 18 and continuing on to an age in which many experts tell us criminal inclinations have clearly burned out, this defendant has continued to lead essentially a life of crime.

> And in all honesty. I believe that after the defendant completes serving this sentence, he will again some day stand before somebody wearing a black robe. Defendant started in 1948 at the age of 18. Prior to the time that he came to me, I have a possession of controlled substance, I have an unlawful use of a firearm, and simple battery at the· age of 59. 18 to 59 is a extremely long criminal career.

3. He does not make the similar, but distinct, argument that the extent of the departures was unreasonable.

4. It is true that the district court could not use all of these convictions as a basis to depart upward, because U.S.S.G. § 4A1.2(e) precludes use of "remote" convictions. However, Application Note 8 to § 4A1.2 states "If the court finds that a sentence imposed outside this time period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3." We find at least two of Johnson's prior convictions to be serious, dissimilar convictions. In ·1951,· Johnson was convicted of taking indecent liberties with a child and was sentenced to eleven and a half years. In 1968, he pled guilty to a string of offenses including armed robbery and attempted murder. In determining the extent of a departure, the district court should tie the departure to the structure of the Guidelines. *See United States v. Tai*, 41 F.3d 1170, 1176 (7th Cir.1994). If these two prior convictions had been used in calculating Johnson's Criminal History Category, six points would have been added—more than the four points that the district court departed upward. For this reason, the district court's departure was reasonable.

departing upward because of the likelihood of recidivism. It gave two reasons: the large number of convictions over a long period of time and that if Johnson's criminal tendencies were going to abate, they would have done so by now. The district court's reasons for departing upward were sufficiently articulated.

Johnson's sentence is AFFIRMED.