**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mark YOUNG, Defendant–Appellant.**

**No. 95–1097.**

United States Court of Appeals, Seventh Circuit.

Submitted June 21, 1995.

Decided Sept. 14, 1995.

---

Donna Eide (submitted), Office of the United States Attorney, Indianapolis, IN, for plaintiff-appellee.

Thomas M. Dawson, Leavenworth, KS, for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and CRABB, District Judge.[*]

RIPPLE, Circuit Judge.

This case is before us for the third time. Mark Young's principal contention is that our remand order following the second appeal was limited in scope. He submits that our order permitted the district court to revisit only its calculation of the quantity of marijuana attributable to him. Therefore, he contends, the district court exceeded its authority when it ordered an upward departure on resentencing. For the reasons that follow, we affirm in part and dismiss in part for lack of jurisdiction.

[*] The Honorable Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation.

## I

### BACKGROUND

The facts and procedural background of this case are set forth in our two prior opinions. *See United States v. Young,* 34 F.3d 500, 501–04 (7th Cir.1994) (*Young II* ); *United States v. Young,* 997 F.2d 1204, 1206–07 (7th Cir.1993) (*Young I* ). We assume familiarity with these decisions and repeat only those facts necessary to the disposition of this appeal.

Mr. Young was part of a marijuana conspiracy. Two men, Claude Atkinson and Ernest Montgomery, had planted and cultivated 12,500 marijuana plants on an Indiana farm. Montgomery learned that Mr. Young could find buyers for the marijuana. He and Atkinson elicited Mr. Young's aid, promising him $100 for every pound Young sold and informing him that approximately 600 to 700 pounds would be available for sale. Mr. Young subsequently obtained buyers for the marijuana. He later was arrested, charged, and convicted of conspiring to manufacture and to distribute marijuana in excess of 1,000 plants and for possession with intent to distribute more than 100 kilograms of marijuana. *See* 21 U.S.C. § 841(a)(1).

### A. *The Original Sentencing and First Appeal*

At the original sentencing hearing, the district court determined that Mr. Young reasonably could have foreseen that the conspiracy involved 12,500 marijuana plants. Based on this finding, it sentenced him on the conspiracy conviction to "life imprisonment without release." *See* 21 U.S.C.

§ 841(b)(1)(A)(vii).[1] The court imposed a concurrent 405 month sentence on the possession with intent to distribute count. This sentence included enhancements for Mr. Young's role as manager or supervisor of the distribution scheme, U.S.S.G. § 3B1.1(b), as well as for obstruction of justice, *id.* § 3C1.1. The district court also addressed the possibility that its life sentence for the conspiracy count was erroneous. In that case, the court noted, it would order an alternative sentence of 405 months, which was at the upper end of the applicable guideline range. It reasoned that this sentence would be appropriate because of the nature of the conspiracy and because of Mr. Young's role in it. Moreover, the court continued, sentencing at the high end of the guideline range was proper because Mr. Young's criminal history category of I understated his actual criminal history. The court noted that Mr. Young's prior felony convictions were too remote in time to be included.

On appeal, we affirmed Mr. Young's conviction but reversed the district court's sentence and remanded for re-sentencing. *United States v. Young,* 997 F.2d 1204, 1206–07 (7th Cir.1993) (*Young I* ). We noted that nothing in the record indicated that Mr. Young could have foreseen that the conspiracy involved more than the 600 to 700 pounds of marijuana he was asked to broker. We also noted that the district court "necessarily" would have to revisit its decision to order an enhancement under U.S.S.G. § 3B1.1(b) because its findings on that issue were predicated upon its determination that Mr. Young reasonably could have foreseen that the conspiracy involved 12,500 plants.

**1.** The statute provides in pertinent part:

**(b) Penalties**

[A]ny person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving—

\* \* \* \* \* \*

(vii) 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 1,000 or more marijuana plants regardless of weight

\* \* \* \* \* \*

such person shall be sentenced to a term of imprisonment which may not be less than 10

years or more than life[.] ... If any person commits a violation of this subparagraph ... after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release[.]

21 U.S.C. § 841(b)(1)(A).

## B. The Second Sentencing and Second Appeal

At the resentencing hearing, the government called Claude Atkinson, who testified that each marijuana plant on his farm could yield 0.25 pounds of marijuana under optimal conditions. The district court made no finding that Mr. Young knew of this plant-to-pounds of marijuana ratio. Nevertheless, it determined that Mr. Young was responsible for 2,800 plants on the ground that the 700 pounds of marijuana he brokered converted, under Atkinson's estimate, into four plants per pound. Based upon this finding, the court again imposed a sentence of life imprisonment. With respect to Mr. Young's sentence on the possession with intent to distribute count, the court once again ordered an enhancement under U.S.S.G. § 3B1.1(b) for Mr. Young's role in the offense. The court held that the enhancement was appropriate for three reasons. First, Mr. Young received a large share of the crime's proceeds—$60,-000 to $70,000—yet he had contributed no capital to the criminal enterprise. Second, he had recruited accomplices to purchase the marijuana. Third, he possessed decision-making power within the organization.

On the second appeal, we again vacated the district court's sentence and remanded for resentencing. *United States v. Young*, 34 F.3d 500, 501–04 (7th Cir.1994) (*Young II* ). We held that the district court had committed two principal errors. First, we stated that the court erred in concluding that it was not required to find that Mr. Young had reason to know that the 700 pounds of marijuana he brokered corresponded to the 2,800 plants for which he was held responsible. More fundamentally, we noted that, because the government had failed to demonstrate how many plants Mr. Young reasonably could have foreseen, "the district court should have sentenced Mr. Young based on the weight for which it found him responsible in the first place, 700 pounds." *Young II*, 34 F.3d at 506. We determined that, in light of these errors, we would "vacate the district court's sentence and remand the case for

resentencing consistent with this opinion." *Id.*

Also on the second appeal, Mr. Young again challenged the enhancement, under U.S.S.G. § 3B1.1(b), of his sentence for his aggravating role in the offense. In addressing this contention, we noted initially that we already had held that the district court's sentence "must be vacated and remanded for resentencing." 34 F.3d at 506. We then expressly stated that "[b]ecause 'the effect of a vacation is to nullify the previously imposed sentence,' the district court on remand will be writing 'on a clean slate.' " *Id.* at 506–07 (quoting *United States v. Atkinson*, 979 F.2d 1219, 1223 (7th Cir.1992)). For reasons of judicial economy, however, we chose to address Mr. Young's contention, noting that the district court was "unlikely" to revisit the issue on remand. We then held that the district court did not clearly err in ordering the enhancement. *See id.* at 507–08.

## C. The Third Sentencing Hearing

Prior to the third sentencing hearing, the district court notified the parties that the court, on its own motion, was considering ordering an upward departure pursuant to U.S.S.G. § 4A1.3. The court explained that an upward departure might be appropriate under this guideline because Mr. Young's criminal history category understated both the seriousness of his past criminal conduct and his likelihood of recidivism.

At the subsequent sentencing hearing, the district court determined that Mr. Young was accountable for 700 pounds (320 kg) of marijuana. This quantity corresponded to an offense level of 26. *See* U.S.S.G. § 2D1.1(c)(7). The court ordered Mr. Young's sentence enhanced two points for obstruction of justice and three points for his aggravating role in the offense, yielding a total offense level of 31. This total offense level, along with Mr. Young's criminal history category of I, corresponded to a guideline range of 108–135 months. The mandatory statutory minimum sentence, however, was 120 months. *See* 21 U.S.C. § 841(b)(1)(B)(vii).[2] However, the

---

**2.** The statute provides that, in the case of violations of 21 U.S.C. § 841(a) involving over 100 kg of marijuana, individuals who have a prior felony

drug conviction "shall be sentenced to a term of imprisonment which shall not be less than 10 years." 21 U.S.C. § 841(b)(1)(B)(vii).

district court departed upward from criminal history category I to II. The court reasoned that Mr. Young's criminal history category did not reflect adequately the seriousness of his past criminal conduct. It emphasized that Mr. Young had three prior convictions for drug offenses in 1973, 1975, and 1978 that were not counted in his criminal history calculation because they were too remote in time. The court noted that, were they not remote, these offenses would have been assigned one criminal history point each. The court also noted that the similarity of these crimes to the instant offense suggested that Mr. Young was likely to commit future drug crimes. Moreover, Mr. Young's conviction for theft in 1976, while he was on probation for a misdemeanor drug offense, further suggested that the likelihood of recidivism was high.

In reaching its decision, the district court rejected Mr. Young's argument that our remand in *Young II* limited the scope of the resentencing hearing to a recalculation of the quantity of marijuana attributable to him. The court focused upon the language in *Young II* indicating that it would be "writing on a clean slate." The court stated that this command required it to "start back at the beginning, to make the appropriate calculations." Sent.Tr. at 3. It indicated that such an approach was, in its view, "particularly appropriate in this case ... because under the prior understandings and rulings of the court there was a mandatory life sentence that Mr. Young was facing, which mooted certain other issues." *Id.*

Based upon the upward departure, Mr. Young faced a sentencing range of 121–151 months. The district court sentenced him to 151 months of imprisonment and to eight years of supervised release. It listed a series of reasons, not challenged on appeal, for its decision to sentence Mr. Young at the upper end of the applicable guideline range. The court noted that Mr. Young also faced a fine of $25,000 to $8,000,000; it fined him $10,000 to be paid through the Inmate Finan-

cial Responsibility Program, with any remainder payable in $100 per month installments during the period of supervised release. Mr. Young's counsel objected to the fine on the ground that there had been no finding that he had the ability to pay. In response, the district court stated that Mr. Young had withheld information from the probation department concerning his financial status. It also noted Mr. Young's illicit business activities, which had been well documented at trial, suggested that he had the capacity to pay such a fine.

## II

### DISCUSSION

Mr. Young raises three issues on appeal. First, he submits that the district court lacked jurisdiction to consider an upward departure because the scope of our remand order in *Young II* was limited. Second, he argues that, even if the district court could consider an upward departure, its determination during the original sentencing hearing that the remote criminal convictions merited a sentence at the upper end of the applicable guideline range precluded the district court from relying upon the convictions as a basis for an upward departure. Third, Mr. Young contends that the district court erred in imposing the $10,000 fine because he had no ability to pay. We address each of these contentions in turn.

### A. *Limited Remand*

■■■ Pursuant to 28 U.S.C. § 2106, we may issue general or limited remands to the district courts.[3] In the context of sentencing decisions, the statute authorizes us "to limit a remand to specific issues or to order complete resentencing." *United States v. Polland*, 56 F.3d 776, 777 (7th Cir.1995) (*Polland II* ). As Judge Flaum noted in *Polland II*, the "mandate rule" requires the district court to adhere to our commands on remand. *Id.; see also United States v. Stanley*, 54

---

**3.** The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree or order of a court lawfully brought before it for review, and may remand the cause and direct the

entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances. 28 U.S.C. § 2106.

F.3d 103, 107 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 238, —— L.Ed.2d —— (1995).

■ Mr. Young submits that, in this case, the mandate rule required the district court to limit the scope of the resentencing hearing to calculating the quantity of marijuana he reasonably could have foreseen was at issue in the conspiracy. Although the quantity issue was the focus of our sentencing discussions in *Young I* and *Young II,* Mr. Young's interpretation of the remand order in *Young II* misconstrues the language of that decision and, in turn, the scope of our remand. As the district court recognized, our remand order in *Young II* was broad: "We therefore vacate the district court's sentence and remand the case for resentencing consistent with this opinion." *Young II,* 34 F.3d at 506. Our order in no way constrained the scope of the issues the district court could consider on resentencing; rather, it simply directed the district court to adhere to our command that its quantity calculation reflect the amount of marijuana, by weight, for which Mr. Young was accountable. Similarly, although we noted that it was "unlikely" that the district court would revisit the aggravating role issue, *id.* at 507, we recognized the possibility that, upon resentencing, the court again might impose the enhancement and that, subsequently, Mr. Young again might appeal it. We therefore addressed the issue in the interests of judicial economy. Our efforts to avoid yet another appeal on the aggravating role enhancement issue would have been unnecessary had we intended to limit the scope of our remand, as Mr. Young contends, solely to the quantity calculation issue.

Our order in *Young II* thus differs from the limited remand order in *Polland I,* which, as we emphasized in *Polland II,* explicitly stated that the defendant's sentence was "vacated and the case … remanded for resentencing on the issue of obstruction of justice."

*Polland II,* 56 F.3d at 777 (quoting *United States v. Polland,* 994 F.2d 1262, 1271 (7th Cir.1993) (*Polland I*), *cert. denied,* — U.S. ——, 114 S.Ct. 1115, 127 L.Ed.2d 425 (1994)). Likewise, the remand order in *Young II* was unlike the order in *United States v. Gutierrez,* 978 F.2d 1463, 1471 (7th Cir.1992), in which we noted in closing that the case was remanded for resentencing "in accordance with this opinion." However, in *Gutierrez,* we made clear that we were vacating the opinion and remanding the case to the district court "for its consideration whether [defendant Soto] is eligible for a two-level reduction as a minor participant." *Id.* On the successive appeal, we recognized the limited scope of our original remand order:

> Soto's contention that he is entitled to a three point reduction of his offense level because his conduct falls between minimal and minor participation is clearly outside the scope of these proceedings. We affirmed Soto's conviction and the determination of his base-level offense and remanded his case to the district court *solely* "for its consideration whether [the defendant] is eligible for a two-level reduction as a minor participant," which it declined to grant. *See Gutierrez,* 978 F.2d at 1471.

*United States v. Soto,* 48 F.3d 1415, 1419 n. 10 (7th Cir.1995). In contrast to the situation in *Gutierrez,* our discussion in *Young II* did not limit the scope of the district court's inquiry on remand. We indicated that "the district court on remand will be writing 'on a clean slate' " and also cited the principle that the effect of a vacation "is to nullify the previously imposed sentence." *Young II,* 34 F.3d at 506–07 (quoting *United States v. Atkinson,* 979 F.2d 1219, 1223 (7th Cir. 1992)). This language comports with several of our cases recognizing our power to order de novo resentencing.[4] Although *Polland II*

---

4. *See, e.g., United States v. Jackson,* 33 F.3d 866, 873 (7th Cir.1994) (noting that effect of vacation is to nullify entire sentence, but choosing to dispose of one sentencing issue in the interests of judicial economy and then remanding for further proceedings consistent with our opinion), *cert. denied,* — U.S. ——, 115 S.Ct. 1316, 131 L.Ed.2d 197 (1995); *United States v. Giacometti,* 28 F.3d 698, 704 & n. 7 (7th Cir.1994) (vacating and remanding sentence and declining to ad-

dress defendant's additional argument on ground that we had no need to "pass on" the issue because "on remand the district court will have a clean slate"); *United States v. Atkinson,* 15 F.3d 715, 718 (7th Cir.1994) (*Atkinson II*) ("Mr. Atkinson does not offer any authority holding that a district court is bound on remand to give the same U.S.S.G. § 5K1.1 downward departure that it gave in its original sentence. This is not surprising. Because 'the effect of a vacation is to

states that we possess the concomitant power to wipe clean only part of the "slate" by issuing a limited remand order, our order in *Young II* was not so limited.[5]

## B. *Upward Departure*

We apply a three-step approach when reviewing an upward departure: "(1) we review de novo whether a district court's stated grounds for departure may properly be relied upon to justify the departure; (2) we review for clear error whether the facts that support the grounds for departure actually exist in the case; and (3) we review deferentially whether the degree of departure is appropriate." *United States v. Ewers*, 54 F.3d 419, 420 (7th Cir.1995); *see also United States v. Tai*, 41 F.3d 1170, 1176 (7th Cir. 1994); *United States v. Korno*, 986 F.2d 166, 168–69 (7th Cir.1993). Mr. Young's argument challenges only whether the district court's stated grounds for departure were adequate. The district court reasoned that Mr. Young's criminal history category score of I did "not adequately reflect the seriousness of [his] past criminal conduct or the likelihood that [he] will commit other crimes." *See* U.S.S.G. § 4A1.3(a). The court based this conclusion on the fact that Mr. Young had three prior drug-related convictions in 1973, 1975, and 1978 that were

similar to his offense of conviction, but too remote in time to be included in his criminal history score. *See* U.S.S.G. § 4A1.2(e). It also noted that an unrelated, uncounted 1976 theft conviction, along with the prior drug offenses, suggested that there was a substantial likelihood that Mr. Young would commit future crimes. Mr. Young does not disagree that these reasons could, in general, justify an upward departure. Rather, he argues that the district court's earlier sentencing decisions in this case precluded it from relying upon his prior uncounted convictions as a basis for upward departure. He notes that, during the original sentencing hearing, the district court relied upon the prior convictions only to justify setting his alternative sentence for the conspiracy count at the upper end of the applicable guideline range. Therefore, he contends, the "law of the case" doctrine precludes the district court from now relying upon these convictions as a basis for upward departure.

■ Mr. Young's argument is without merit. First, his contention is grounded in unsubstantiated implication. In the portion of the original sentencing proceeding upon which he relies, the district court explained why it was imposing an alternative sentence on the conspiracy count at the high end of

nullify the previously imposed sentence,' a district court sentencing on remand writes 'on a clean slate.'") (quoting *Atkinson I*, 979 F.2d at 1223).

5. The cases from other circuits that Mr. Young cites to support his argument are unavailing. For example, although *United States v. Pimentel*, 34 F.3d 799 (9th Cir.1994) (*Pimentel II*) (per curiam), *cert. denied*, ─── U.S. ───, 115 S.Ct. 777, 130 L.Ed.2d 671 (1995), held that the court's remand order in *Pimentel I* was limited, the court acknowledged that its earlier decision "expressly [had] limited the scope of our remand to consideration of a single sentencing issue: whether, and to what extent, the district court would exercise its authority to depart based upon Pimentel's extraordinary family circumstances." *Id.* at 800; *see United States v. Pimentel*, No. 92–50097, 1993 WL 362253, at *2 (9th Cir. Sept. 17, 1993) (*Pimentel I*). Similarly, even though the Second Circuit recently held in *United States v. Stanley*, 54 F.3d 103 (2d Cir.1995) (*Stanley II*), *petition for cert. filed*, (U.S. July 26, 1995) (No. 95–5363), that the mandate rule prevented the district court from reconsidering various issues on remand, the court made clear that its earlier decision had not called "for *de novo* resentenc-

ing." *Id.* at 108. Instead, *Stanley I* had "identified a narrow issue for remand: whether the district court's loss calculation was based on the actual or intended loss to Merchants Trust and its customers." *Id.; see United States v. Stanley*, 12 F.3d 17, 21 (2d Cir.1993) (*Stanley I*), *cert. denied*, ─── U.S. ───, 114 S.Ct. 1572, 128 L.Ed.2d 216 (1994). Finally, although, as Mr. Young notes, the Fourth Circuit's remand order in *United States v. Apple*, 915 F.2d 899, 915 (4th Cir.1990) (*Apple I*) did not state explicitly that the scope of the resentencing hearing was limited to the propriety of a firearm enhancement imposed under U.S.S.G. § 2D1.1(b)(1), the court subsequently made clear that its remand instructions "concerned only the propriety of enhancements for weapon possession" and that "to the extent that the sentences may have been incorrect, our sense was that they could have been so only with respect to the enhancements." *United States v. Apple*, 962 F.2d 335, 337 (4th Cir.1992) (*Apple II*). Unlike the situation in *Apple II*, the remand order at issue in this case makes clear that we did not intend to cabin the scope of the resentencing proceeding.

the applicable guideline range, whose high-to-low spread exceeded twenty-four months. Mr. Young has cited no portion of the transcript in which the district court explicitly held that his prior convictions could not justify an upward departure. In any event, Mr. Young's argument also suffers from an infirmity related to his argument on the limited remand issue: He fails to account for the scope of the remand order in *Young II*. That order, as we have noted above, vacated the district court's sentence and remanded for resentencing "on a clean slate." Accordingly, the district court was free to reconsider whether Mr. Young's criminal history category adequately reflected his past convictions and potential for recidivism. Our decision in *United States v. Atkinson*, 15 F.3d 715 (7th Cir.1994) (*Atkinson II* ), which considered the second appeal of one of Mr. Young's coconspirators, supports this result. Atkinson argued that the district court had erred on resentencing by not authorizing a more significant downward departure. We noted that, assuming that Atkinson's understanding of the original sentencing proceedings was correct, the district court was under no obligation to give him the same downward departure on resentencing as it had during the original sentencing hearing because our decision in *Atkinson I* had vacated the entire sentence and ordered de novo resentencing. *See id.* at 718–19. Our order in *Young II*, like the order in *Atkinson I*, compelled the district court only "to impose a just sentence derived within the discretionary bounds the guidelines set forth." *Atkinson II*, 15 F.3d at 719. Thus, on resentencing following *Young II*, the district court was free to consider whether Mr. Young's criminal history category score was adequate.

■ Likewise, the court's manner of departure was not erroneous. The guidelines permit district courts to consider sentences imposed outside the time period proscribed by U.S.S.G. § 4A1.2(e) as a basis for departure under U.S.S.G. § 4A1.3 if the remote sentences are "evidence of similar, or serious dissimilar, criminal conduct." U.S.S.G.

§ 4A1.2, comment. (n. 8); *cf. United States v. Johnson*, 53 F.3d 831, 835 n. 4 (7th Cir.1995). Mr. Young's three prior drug-related convictions constitute such similar criminal conduct. Were they eligible for inclusion in his criminal history score, the points attributable to these offenses would have placed Mr. Young at least into criminal history category II;[6] the district court indicated that, if these offenses were not remote, they would have placed Mr. Young into criminal history category III. Additionally, as we stated above, there is no dispute either that the district court erred in concluding that the previous drug-related convictions were similar to Mr. Young's offense of conviction, *cf. Johnson*, 53 F.3d at 835, or that the degree of departure from criminal history category I to II was inappropriate. *Cf.* U.S.S.G. § 4A1.3 ("In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable."). Accordingly, we hold that the district court did not err in departing upward to criminal history category II.

## C. *The Fine*

Mr. Young submits that the district court erred in imposing the $10,000 fine because there is no evidence that he has the ability to pay. The government responds that Mr. Young has the burden of proof on this issue. It then submits that Mr. Young cannot meet this burden because any deficiencies in the record are a result of his failure to provide the probation office with information about his financial condition.

■ Before a district court imposes a fine, it must consider the factors set forth in 18 U.S.C. § 3572(a) and U.S.S.G. § 5E1.2(d), "or at least the factors relevant to the particular case." *United States v. Morgano*, 39 F.3d 1358, 1372 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2559, 132 L.Ed.2d 813 (1995); *see also United States v. Jones*, 983 F.2d 1425, 1434 (7th Cir.1993). The record makes clear that the district

---

**6.** *See* U.S.S.G. § 4A1.1 (listing points included in criminal history score for various offenses); U.S.S.G. Ch. 5, Pt. A (indicating that criminal history category of II corresponds to individuals with two or three criminal history points).

court complied with this requirement. In addition to taking note of the relevant information contained in the pre-sentence report, *cf. Morgano,* 39 F.3d at 1372 (indicating that district court's obligation is satisfied in most cases if it adopts PSR's analysis), such as Mr. Young's lack of dependents, the court commented explicitly upon various factors during the sentencing hearing. For example, it noted the seriousness of Mr. Young's substantive offenses and emphasized the high fine authorized by 21 U.S.C. § 841(b). It commented that no restitution was necessary. Furthermore, it stated that three factors ameliorated the burden of the fine actually imposed on Mr. Young: first, the fine imposed was below the minimum proscribed by the guidelines; second, Mr. Young could meet his obligation through the Inmate Financial Responsibility Program; and, third, Mr. Young could make $100 per month installment payments on the outstanding balance during his period of supervised release. The court also commented that the evidence at trial, which had indicated that Mr. Young was promised $100 per pound for the marijuana he brokered and also that he owned and operated an illicit business, indicated that Mr. Young had the ability to support himself.

Mr. Young's only argument with respect to these factors focuses upon whether the record supports the district court's finding that he could pay the fine. Mr. Young, however, had the burden of establishing that he was unable to pay the $10,000. *See Jones,* 983 F.2d at 1434 (citing U.S.S.G. § 5E1.2(f)–(g)); *see also United States v. Mustread,* 42 F.3d 1097, 1106 (7th Cir.1994). He refused to provide any financial data to the probation department and thus failed to meet his burden of proof. *Jones,* 983 F.2d at 1434; *see also United States v. Soyland,* 3 F.3d 1312, 1315 (9th Cir.1993), *cert. dismissed,* —— U.S. ——, 115 S.Ct. 32, 129 L.Ed.2d 928 (1994).

In response to the dearth of financial information in the record detailing Mr. Young's present ability to pay the $10,000 fine, the district court ordered the fine paid through the Inmate Financial Responsibility Program, *see* 28 C.F.R. §§ 545.10–545.11, with the remainder paid in $100 per month installments during the period of supervised release. The district court did not err in reaching this conclusion. We previously have rejected the argument that such an order is "without legal authority under the sentencing guidelines." *United States v. Burrows,* 48 F.3d 1011, 1019 & n. 12 (7th Cir.) (collecting cases), *cert. denied,* —— U.S. ——, 115 S.Ct. 2632, 132 L.Ed.2d 872 (1995).[7] Moreover, the fine the district court actually imposed was below the minimum set forth in the fine table, *see* U.S.S.G. § 5E1.2(c)(3).[8] Recent decisions in our circuit make clear that we lack jurisdiction to review any claim challenging the extent of the district court's departure below the minimum amount autho-

**7.** *See also* 18 U.S.C. § 3572(d) (authorizing district courts to impose fines payable in installments "over the period provided by the court"); *United States v. Sanchez–Estrada,* 62 F.3d 981, 987–95 (7th Cir.1995) (rejecting series of legal arguments against imposition of fine payable through Inmate Financial Responsibility Program); *United States v. Gomez,* 24 F.3d 924, 927 (7th Cir.) (concluding that such orders are valid), *cert. denied,* —— U.S. ——, 115 S.Ct. 280, 130 L.Ed.2d 196 (1994), and *cert. denied,* —— U.S. ——, 115 S.Ct. 281, 130 L.Ed.2d 198 (1994).

**8.** We note that the fine table in the guidelines manual proscribes a fine range of $15,000 to $150,000 for individuals whose base offense level is 31. *See* U.S.S.G. § 5E1.2(c)(3). The guideline also provides that the maximum fine limitation does not apply if the defendant "is convicted under a statute authorizing ... a maximum fine greater than $250,000.... In such cases, the court may impose a fine up to the maximum authorized by the statute." *Id.* § 5E1.2(c)(4). 21 U.S.C. § 841(b)(1)(B) authorizes a fine of $4,000,000 for each count of conviction under 21 U.S.C. § 841(a) in cases involving individuals with a prior felony drug conviction. Thus, the proper fine range in this case was $15,000 to $8,000,000, not $25,000 to $8,000,000.

The error in computing the low end of the fine range does not affect our analysis, however, because the district court departed down to $10,000 on the ground that Mr. Young had no ability to pay a higher amount. Mr. Young makes no argument that the district court, had it realized the fine range began at $15,000 rather than at $25,000, would have imposed a lower fine, and our reading of the record reveals no significant basis for that argument. The district court fixed the amount of the fine at $10,000 because it believed that amount was a realistic level, given the court's estimate of the defendant's ability to pay. Certainly, there is no plain error.

rized by the guidelines.[9]  Accordingly, we are without authority to review the extent of the district court's departure below the minimum fine level.

## Conclusion

Mr. Young's sentence to incarceration and supervised release is affirmed.  Mr. Young's challenge to the $10,000 fine is dismissed for lack of jurisdiction.

AFFIRMED in part, DISMISSED in part.

**9.**  *See Sanchez–Estrada,* 62 F.3d at 995; *United States v. Gibbs,* 61 F.3d 536, 540 (7th Cir.1995); *Gomez,* 24 F.3d at 927.