83 F.3d 424
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank J. SCHWEIHS, Defendant-Appellant.
 No. 95-1974.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 14, 1995.
Decided April 29, 1996.
 
 Before POSNER, Chief Judge, and FAIRCHILD and MANION, Circuit Judges.
 
 ORDER
 
 1
 This appeal challenging a new sentence is successive to an appeal which challenged both the underlying conviction and the original sentence. The original panel agreed to retain this appeal. After an examination of the briefs, the record, and appellant's statement as to need for oral argument, we have concluded that oral argument is unnecessary and the appeal will be submitted on the briefs and record.
 
 
 2
 Our opinion on the earlier appeal is U.S. v. Schweihs, 971 F.2d 1302 (7th Cir.1992) and familiarity with that opinion is essential.
 
 
 3
 We affirmed the convictions of Schweihs and his co-defendant Daddino. The government conceded error with respect to Daddino's sentence. In part D we decided four claims by Schweihs of improper application of the Guidelines in determining his sentence. In subparts 1, 3, and 4 we upheld the decisions of the district court. In subpart D2 we decided that an increase in Schweihs' offense level by four levels for being a leader of criminal activity involving five or more participants, U.S.S.G. § 3B1.1(a) was not supported by required findings. We concluded subpart D2 "Thus, we vacate the sentence and remand to the district court for resentencing." 971 F.2d at 1318. At the close of the opinion we said "The sentences are VACATED and the case remanded for resentencing consistent with this opinion." Id. at 1325. The court's judgment and mandate said, "the judgments ... are VACATED as to the sentences, and the case is REMANDED for resentencing, in accordance with the decision of this court entered this date." We may well have believed that the language just quoted from the opinion and mandate sufficiently implied that the resentencing of Schweihs would be limited to correcting the error on account of which we vacated the sentence and remanded for resentencing. If we thought so, we overlooked language in U.S. v. Barnes, 948 F.2d 325 (7th Cir.1991):
 
 
 4
 While it is true our primary concern in remanding the case was to ensure improper hearsay statements did not taint the earlier proceeding, the effect of the order was to nullify Barnes' sentence. Accordingly, when Barnes appeared before the trial judge on remand, he did so with a clean slate as far as sentencing was concerned; his previous sentence was not to be rubber stamped, but instead a new sentencing determination was to be made. Along with a new sentencing determination came the right to address the court. Id. at 330
 
 
 5
 After our Schweihs opinion, but before the district court began consideration of resentencing, this court emphasized, and perhaps expanded, Barnes. In U.S. v. Atkinson, 979 F.2d 1219 (7th Cir.1992), we vacated a sentence and remanded for resentencing. We said, "While not all aspects of his sentencing were erroneous, the effect of a vacation is to nullify the previously imposed sentence, [citing Barnes ]. Therefore, the district court will be writing on a clean slate and may entertain any and all objections, even those not raised at the earlier sentencing." Id. at 1223.
 
 
 6
 Citing Barnes and Atkinson the district court understandably decided that consideration of Schweihs' objections, both previously and newly raised was appropriate, and proceeded accordingly.
 
 
 7
 There has been further development of the "clean slate" rule. In U.S. v. Polland, 994 F.2d 1262, 1271 (7th Cir.1993) cert. denied, 114 S.Ct. 1115 (1994), we had remanded for resentencing on a specified issue. In U.S. v. Polland, 56 F.3d 776, 778 (7th Cir.1995), we held that under the earlier mandate only the specified issue was properly before the district court at resentencing. We also wrote, "The law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances." Id. at 779. See also U.S. v. Young, 66 F.3d 830, 836-37.
 
 
 8
 We did not expressly limit the vacation of Schweihs' original sentence to so much of it as was dependent on the particular application of the Guidelines which we found erroneous, nor limit resentencing to the avoidance or correction of the error. We did, however, require resentencing consistent with the opinion and it is at least arguable that this is a limitation preventing reconsideration by the district court of the particular applications of the Guidelines which we had upheld. But see Young, 66 F.3d at 836. In any event, we think the law of the case doctrine accomplishes the same result and we will dispose of several of appellant's arguments on that rationale.
 
 
 9
 The determinations challenged fall into several stages. After our mandate on the earlier appeal reached the district court, sentencing was postponed from time to time. On February 16, 1993, counsel for Schweihs filed a motion for an order directing the government to make a complete search of federal and local agency files to determine what promises or representations were made to trial witnesses LaPapa and Lascola. The motion was denied April 19, 1993 and the order is challenged on appeal.
 
 
 10
 On May 11, 1993, Judge Williams filed a memorandum deciding issues raised by the parties concerning the application of the guidelines, and on June 2 she granted the government's motion to reconsider, and made a change on one issue. On June 10, then the date for resentencing, Schweihs made a motion for recusal, which Judge Williams denied. Thereafter Schweihs filed a petition in this court seeking a writ of mandamus, and sentencing was stayed. We denied the petition June 15, 1994 by unpublished order.
 
 
 11
 An updated presentence report was obtained and Schweihs filed sentencing submissions on January 31 and April 4, 1995. The sentence now on appeal was imposed April 5. The original term of imprisonment on offenses subject to the Guidelines was 157 months and on pre-Guidelines offenses 180 months, concurrent. The April 1995 sentence on Guidelines offenses was 120 months and on pre-Guidelines offenses ten years, concurrent.
 
 
 12
 We deal with the appellant's arguments in the sequence and numbering in which they appear in his brief but we supply our own headings.
 
 
 13
 I. Insufficient Consideration of Arguments.
 
 
 14
 In his first argument Schweihs faults Judge Williams for failure to consider all of his sentencing arguments. This portion of his brief, however, fails to identify, let alone develop, any proposition of law or fact which should have been considered. He does refer to his supplemental sentencing submission filed January 31, 1995 and asserts that it "indicated for which issues the decisional law had changed," again without explanation. On March 21, 1995, Judge Williams entered an order which addressed but denied Schweihs' claim that his prison record of good conduct merited a two point reduction for acceptance of responsibility. As to reopening her earlier decisions she wrote, "Absent some indication that additional potentially dispositive evidence has come to light, or the controlling law has changed since entry of the June 1993 stay, the court will not reconsider its earlier resentencing rulings." Schweihs has given us no reason to find any error or abuse of discretion.
 
 
 15
 II. A. Different Treatment of Schweihs and Daddino.
 
 
 16
 Schweihs argues that the prosecution arbitrarily sought a gravely disparate sentence for him in comparison with what it sought against co-defendant Daddino. Schweihs' ultimate Guidelines term of imprisonment is 120 months. Daddino's was 35 months (plus a fine and restitution). Schweihs points out that the government sought a substantial upward departure as to him, but none as to Daddino. He cites Wade v. United States, 504 U.S. 181 (1992). There, with respect to the government's power to file a motion to depart as a condition precedent to a departure where the defendant has provided substantial assistance, the Court agreed "that a prosecutor's discretion when exercising that power is subject to constitutional limitations that district courts can enforce." Id. at 185. Aside from the question whether Wade is authority that when the government arbitrarily treats one defendant more leniently than a co-defendant similarly situated, the defendant more severely treated is entitled to the lenient treatment, we find no showing that difference in treatment between Schweihs and Daddino was arbitrary.
 
 
 17
 Schweihs made a similar argument claiming unfairly unequal treatment in his petition for a writ of mandamus compelling Judge Williams to step aside. In our order denying the petition we said, "there is no showing that any difference in treatment between Schweihs and his co-defendant, Daddino, in sentencing or otherwise, was not based on objective factors. The different roles each played in the extortion and conspiracy charges of which each was convicted are apparent in our opinion issued in the merits appeal." In the Matter of Frank J. Schweihs, No. 93-3734, June 15, 1994, p. 2.
 
 
 18
 II. B. Double Counting.
 
 
 19
 In determining Schweihs' original sentence as well as the sentence now on appeal, Judge Williams made a seven offense level upward departure on account of Schweihs' use of organized crime connections in extorting money. See Schweihs, subpart D1, 971 F.2d at 1316. At resentencing she also assessed a 2 level enhancement of offense level because Schweihs was a supervisor or manager in the collections involved. § 3B1.1(c), U.S.S.G.
 
 
 20
 Schweihs argues that the upward departure and enhancement involve improper double counting. He cites U.S. v. Panadero, 7 F.3d 691, 695 (7th Cir.1993). The part of Panadero on which he relies deals with an upward departure in offense level on account of defendant's forgery of checks which did not cause any loss but was done to conceal thefts accomplished by other forgeries. The district court had found that the adjusted offense level without the departure did not adequately reflect the seriousness of defendant's conduct. This court disagreed, holding that "to any extent that the additional checks reflected that Panadero's conduct was more harmful or serious ..., that has already been accounted for in the two-level increase for more than minimal planning under Guidelines section 2F1.1(2)." Id. at 696.
 
 
 21
 Our present case is significantly different from Panadero. The seven level upward departure was based on Schweihs' use of "his organized crime ties as a weapon to extract monies from Mr. Wemette." Remarks from original sentencing, quoted in U.S. v. Schweihs, 1993 WL 157450 * 4 & 5 (N.D.ILL). See also 971 F.2d at 1316. The increase in offense level provided by U.S.S.G. § 3B1.1 reflects a defendant's role among the participants in particular criminal activity. We find no duplication between (1) a departure on account of a defendant's use of his connections with organized crime as a weapon to extract money and (2) an increase in offense level based on his role among the participants involved in the particular criminal activity. We have already approved Judge Williams' determination that the use of organized crime connections as a weapon is an aggravating circumstance "not adequately taken into account by the Sentencing Commission in formulating the guidelines." 971 F.2d at 1317.
 
 
 22
 II. C. Extent of Departure.
 
 
 23
 Schweihs' next argument is that the extent of the seven level upward departure is unreasonable. We held on the earlier appeal that the amount of the departure was appropriate, and the law of the case applies. None of the circumstances which might cause us not to follow it are present. See Parts and Elec. Motors, Inc. v. Sterling Elec., 866 F.2d 228, 231 (7th Cir.1988).
 
 
 24
 III. Grouping of Counts.
 
 
 25
 Schweihs argues that count FIFTEEN should have been grouped with other counts. We held in the earlier appeal that COUNT FIFTEEN does not qualify for grouping. 971 F.2d at 1320. This is law of the case and there is no reason not to follow it.
 
 
 26
 IV. Increase for Supervisory Role.
 
 
 27
 Schweihs next challenges the two level increase pursuant to § 3B1.1(c) on two grounds.
 
 
 28
 Up to the date Schweihs was to be resentenced the government took the position that there should be a four level increase under § 3B1.1(a). It contended there was evidence of five or more participants in the criminal activity, or that it was otherwise extensive, and that Schweihs was a leader. In Judge Williams' order of May 11, 1993 she acknowledged that the Chicago Outfit was an extensive operation, but concluded that the evidence did not adequately demonstrate that Schweihs was a leader or organizer of the Outfit. She therefore denied the four level increase. She also noted that there was little question that defendant oversaw the street tax collections from Wemette and Cross.
 
 
 29
 After the May 11 decision the government filed a motion for reconsideration, again seeking a 4 level increase, but, alternatively, 3 levels under 3B1.1(b) or 2 levels under 3B1.1(c). Judge Williams stayed sentencing and issued a decision June 2. She remained unpersuaded that there were five or more participants in the extortion of Wemette and Cross, although she had found defendant to be a manager or supervisor. She sternly criticized the government for its delay in advancing its alternative claims. She did, however, grant a 2 level increase under § 3B1.1(c), saying "This court has already determined that defendant was a supervisor or manager because he oversaw the collection of street tax from Wemette and Cross during the time period of the charged conspiracy."
 
 
 30
 Schweihs first argues that the government waived reliance on § 3B1.1(c) by its failure to mention that alternative until the very last moment before sentencing, causing further delay. We think that it was within Judge Williams' discretion to excuse the delay.
 
 
 31
 The second argument is that there was no evidence that Schweihs was a supervisor over Daddino or any other person in the collection of street tax from Wemette and Cross. On the first appeal we noted evidence that Schweihs, Daddino, and Eboli were participants in the conspiracy, and references by Daddino to Eboli as his "boss" and by Schweihs to Eboli as his partner. 971 F.2d at 1318. We also noted that when Wemette complained to Schweihs about Amato as collector, Schweihs arranged for Daddino to begin collections, 971 F.2d at 1309. We concluded "The district court could enhance by two levels based solely upon Schweihs' control over and leadership of Daddino. U.S.S.G. § 3B1.1(c)," 971 F.2d at 1318, n. 6. Judge Williams' finding that Schweihs was a supervisor during the period of this conspiracy so that a two level increase under § 3B1.1(c) was appropriate, was not clear error.
 
 
 32
 V. Sentencing Manipulation.
 
 
 33
 Schweihs' next argument is that his sentence was the product of government manipulation and entrapment which arbitrarily increased his punishment by permitting the prohibited conduct to continue over the course of a year. He suggests that there could have been an arrest after the "first several pickups" of money, and that the severity of the sentence depended in part on the amount of money.
 
 
 34
 Sentencing entrapment occurs when the government causes a defendant initially predisposed to commit a lesser crime to commit a more serious offense. U.S. v. Garcia, --- F.3d ----, (7th Cir. # 93-2512, March 22, 1996, slip op. p. 2). Appellant is really claiming sentencing manipulation. This court, however, has rejected the theory of sentencing manipulation. Id.
 
 
 35
 VI. Denial of "Brady--Giglio Motions."
 
 
 36
 On February 16, 1993, Schweihs filed a motion that the court "direct that the government make a full and complete search of federal and local agency files to determine what benefits, deals, or promises (or representations) were made to either Nicholas LaPapa and Joseph Lascola same not being disclosed to the Court or counsel (or the jury) during trial."
 
 
 37
 LaPapa and Lascola were witnesses. See 971 F.2d at 1310 to 1313. The motion was supported by the affidavit of Schweihs' then counsel. Counsel stated that he made repeated requests for Brady-Giglio disclosures and that he had never seen witnesses with the records of LaPapa and Lascola testifying for the prosecution without the benefit of some promises or representations.
 
 
 38
 On April 19, 1993, Judge Williams denied the motion. The order noted that the motion was based on counsel's "gut feeling", but no other evidence of improperly withheld material; that during trial pertinent materials from the FBI were tendered, and defendant informed there were no Brady-Giglio materials in the IRS files and that the two witnesses had stated they had no informal relationships with government agencies. No evidence was elicited on cross-examination.
 
 
 39
 Noting the lack of any evidence suggesting wrongfully withheld information, Judge Williams declined to order the requested search. Judge Williams did not abuse her discretion in denying what was essentially a motion for discovery of Brady material. Indeed it might arguably have been an abuse of discretion to order discovery based only on counsel's speculation. See U.S. v. Morris, 957 F.2d 1391, 1402-03 (7th Cir.1992); U.S. v. Romo, 914 F.2d 889, 898-99 (7th Cir.1990).
 
 
 40
 VII. Use of Reversed Conviction.
 
 
 41
 The next argument is that Schweihs' criminal history category was improperly raised from I to II on a "reversed conviction." On the earlier appeal we held that the reversed conviction referred to provided reliable information of criminal conduct which could indicate that the criminal history category underrepresents the seriousness of past criminal conduct. We also found no abuse of discretion in the degree of departure. 971 F.2d 1318-20. This is the law of the case and there is no reason not to follow it.
 
 
 42
 VIII. Acceptance of Responsibility.
 
 
 43
 The next argument is that the district court should have awarded a two level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. This claim is based on Schweihs' record of good conduct while in prison. One officer referred to him as a "model inmate." He did not plead guilty. Application Note 2 says there may be "rare situations" where a defendant who does not plead guilty may clearly demonstrate acceptance of responsibility. The example given is a defendant who goes to trial because he wants to make a constitutional challenge to a statute or a challenge of its applicability to his conduct. Exemplary conduct in prison is significantly dissimilar from the example. In her May 11, 1993 order Judge Williams noted two cases where post offense conduct had been considered an equivalent of acceptance of responsibility: U.S. v. Van Dyke, 895 F.2d 984, 987 (4th Cir.1990) (Defendant's participation in drug treatment program and counseling inmates about drug abuse while a pretrial detainee considered rehabilitative conduct that could warrant an adjustment under § 3E1.1.); U.S. v. Bruder, 945 F.2d 167, 173 (7th Cir.1991) (Defendant's rehabilitative conduct between the offense and sentencing could not be the basis for a downward departure because it was the equivalent of acceptance of responsibility and he had received an adjustment on that ground.). Judge Williams commended Schweihs' record of good conduct, but concluded it did not demonstrate his affirmative acceptance of responsibility. In the order issued March 21, 1995 she again commended his progress, but again concluded it was an insufficient indication of acceptance of responsibility. Application Note 5 tells us that because of the sentencing judge's unique position, her determination is entitled to great deference on review. We find no error.
 
 
 44
 The judgment appealed from is affirmed.