UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard Alexander SMITH,
Defendant–Appellant.

No. 96–2934.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1996.

Decided Dec. 19, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied
Jan. 21, 1997.

Thomas E. Leggans, argued, Office of the United States Attorney, Benton, IL, for Plaintiff–Appellee. .

Melissa A. Day, argued, Office of the Federal Public Defender, Benton, IL, for Defendant–Appellant.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Richard Alexander Smith had the bad luck to be stopped for speeding on Interstate 57 in Williamson County, Illinois. After determining that Smith did not own the car he was driving, the state trooper obtained written permission from Smith to search it. The trooper noticed packages wrapped in duct tape in the right door panel. One package was examined and found to contain what looked like marijuana. The car was taken to the Williamson County Jail where the door was dismantled. The other packages, all wrapped in duct tape, contained approximately 5 kilograms of marijuana. In addition, a .38 caliber semi-automatic pistol was found, wrapped in a red shop cloth secured with masking tape.

So, rather than getting a traffic ticket, Smith was charged in a three-count federal indictment. Specifically, he was charged with possession with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) on count 1, knowingly using and carrying a firearm in connection with drug trafficking, in violation of 18 U.S.C. § 924(c) on count 2, and possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(1) on count 3. To add to his problems, Smith was subject to deportation to his native country, Belize.

Smith went to trial before Chief Judge J. Phil Gilbert in the Southern District of Illinois and was found guilty by a jury on July 18, 1994, on all counts. He was sentenced to a term of 16 months on counts 1 and 3 and a mandatory 60–month consecutive term on the § 924(c) count. He appealed, raising issues regarding a motion to suppress and certain applications of the guidelines. His attorney filed a no-merit brief, pursuant to *Anders v. State of California*, 386 U.S. 738,

87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and sought leave to withdraw. The request was granted and the appeal was dismissed. Smith was left in prison to serve his 76–month term.

Smith's luck changed, however, when the United States Supreme Court decided *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). He quickly filed a petition pursuant to 28 U.S.C. § 2255, claiming that his § 924(c) conviction for using and carrying a firearm in connection with a drug offense must be vacated. The government conceded the point but asked that Smith be resentenced on the two remaining counts. The § 924(c) count was dismissed on June 7, 1996.

On June 13, 1996, Smith was about to be released from custody because he had served approximately 26 months of a sentence which, at that point, seemed to the Bureau of Prisons to be only 16 months long. The government objected to his release pending resentencing and Chief Judge Gilbert ordered that Smith be detained.

Then on June 25, 1996, the government filed a motion to withdraw its request for resentencing on the basis that Smith had completed service of the currently valid portion of his sentence prior to the granting of the § 2255 petition vacating the § 924(c) conviction. The government stated that it believed the issue presented a close question and, to avoid depriving Smith of his rights, it said Smith should be released. But Chief Judge Gilbert had other ideas. On June 26 he informed the parties that he would not agree to Smith's release, and on July 2, 1996, he issued an order setting out what he thought was his legal authority to resentence Smith. At a July 29, 1996, hearing, Smith was resentenced on counts 1 and 3 to concurrent terms of 33 months. Smith, not unexpectedly, appeals.

Smith's position is pretty much summed up in a statement he made during the resentencing proceeding:

Well, I think the whole resentencing is unfair to me. And, you know, it's just unfair. I done did 27 months on the origi-

nal sentence on Count 1 and Count 3. I don't see any reason for more time.

Couched in more traditionally legal terms, his contentions are that on a § 2255 petition, the district court is without jurisdiction to revise the entire "sentencing package" but rather is limited to the issues on the counts which the defendant raises; secondly, he contends that imposing an enhancement for the possession of a firearm after the § 924(c) count has been dismissed and otherwise increasing the sentence on counts 1 and 3 violates the Double Jeopardy Clause of the Constitution.

Smith's arguments require us to look in some detail at the two sentences he received. At the original sentencing Smith's base offense level was determined, based on the marijuana offense in count 1, to be level 12, under United States Sentencing Guideline § 2D1.1. His criminal history category was I. His sentencing range on counts 1 and 3 was 10 to 16 months. Pursuant to U.S.S.G. § 2K2.4, no enhancement for possession of a firearm is allowed when there is a conviction under § 924(c), which carries a mandatory minimum consecutive sentence of 5 years. Therefore, the first time around, Smith's sentence on the non-sec. 924(c) counts was not enhanced; however, he was sentenced at the top of the range—16 months on counts 1 and 3—and, of course, he received the 5 consecutive years on the § 924(c) count, for a total sentence of 76 months.

At resentencing, the offense level was recalculated, this time with count 3—possession of a firearm by an illegal alien—serving as the base offense. Pursuant to the applicable guideline, § 2K2.1(a)(6), the offense level was 14. Then the offense level was enhanced pursuant to § 2K2.1(b)(5) for possession of a gun in connection with another felony, bringing the offense level up to 18. The criminal history category did not change and the new sentencing range was 27 to 33 months. The sentence imposed was, as we have said, 33 months.

■ The first issue is whether the district court had the authority to restructure Smith's entire sentence when the case was before the court on a § 2255 petition which only attacked the validity of one of the counts. We have not directly answered this question, but our approach has traditionally been that in imposing sentence, a district judge quite properly looks to the bottom line, the total number of years (or under the guidelines, months) which effectuates a sentencing plan, or what we have referred to as a "sentencing package." In *United States v. Shue,* 766 F.2d 1122 (7th Cir.1985), the defendant was convicted on four counts and sentenced to 5 years on count 1, 25 years on count 2 consecutive, and two concurrent 5-year terms on counts 3 and 4. We reversed on three counts, including count 2 where Shue's sentence was a whopper. On remand the district court resentenced Shue to 20 years on the one undisturbed count (where the original term was 5 years) and Shue again appealed. In *Shue* Two we explained that when part of a sentence is vacated the entire sentencing package becomes "unbundled" and the judge is entitled to resentence a defendant on all counts. We explained in *United States v. Shue,* 825 F.2d 1111 (7th Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987):

> [T]he general rule [is] that, when an appellate court affirms some counts and reverses others, it is open to the district court to resentence in order to effectuate the original sentencing intent.

At 1113. We went on to note:

> When a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent. When, on appeal, one or more counts of a multicount conviction are reversed and one or more counts are affirmed, the result is an "unbundled" sentencing package.

At 1114.

While *Shue* points toward answers to some questions in connection with the present case, it raises or does not explicitly answer others. *Shue* involved a reversal by the court of appeals. Is an order from an appellate court a prerequisite to a district judge's ability to resentence on all counts? Or can the district judge, as Chief Judge Gilbert did in this case, decide on his own that resen-

tencing is in order? To say he cannot, of course, would raise the specter of requiring meaningless procedural formalities. In regard to sentences attacked under the old Rule 35 of the Federal Rules of Criminal Procedure, in *United States v. Bentley*, 850 F.2d 327, 328–329 (7th Cir.), *cert. denied*, 488 U.S. 970, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988), we made clear our impatience with empty formalities:

> Given *Shue*, nothing but pointless formalism would support a distinction between a sentencing plan disrupted by the vacatur of some counts on appeal and a plan shattered by the district court's own recognition that the plan was infested with error. We suppose that a district judge might deny the Rule 35 motion and acquire the power to resentence the defendant after the inevitable reversal, but what would be the point?

*Bentley* also helps us answer a point involving our original question: Is the power to fully resentence one that arises only after direct appeal? *Shue*, as we noted, was an appeal from a sentence imposed following a remand from us on a direct appeal. Is the analysis appropriate in other situations? *Bentley*, without any trouble, applied the principles set out in *Shue* to a sentence under attack under Rule 35. We think it makes good sense to apply the same principle to proceedings under § 2255.

If a multicount sentence is a package—and we think it is—then severing part of the total sentence usually will unbundle it. And we do not think it matters what means are used to bring resentencing proceedings before the district court. Under the sentencing package concept, when a defendant raises a sentencing issue he attacks the bottom line. That Smith's case came before the district court pursuant to a § 2255 petition, rather than a remand from us or by some other means, does not change that fact.

Lingering questions remain, however. Does the sentencing package remain a viable concept under the sentencing guidelines? In the old days of almost unlimited discretion in sentencing, a district judge could follow several paths to a desired result. Under the guidelines, of course, discretion is far more limited, and the paths are more like catwalks than boardwalks. We have recently noted how the guidelines have altered our ideas. In *United States v. Severson*, 3 F.3d 1005, 1013 (7th Cir.1993), we stated:

> The Sentencing Guidelines brought a formulaic method to sentencing, eliminating much of the district court's discretion and altering the idea of a "sentencing package".

In *Severson*, potential new evidence discovered during appeal had a possible bearing on a denial of the defendants' request for a reduction for acceptance of responsibility and the imposition of an enhancement for obstruction of justice. No other aspects of the sentence were disturbed. In that circumstance, the only parts of the sentence which the district court was instructed to consider upon remand were those two elements.

What we said in *Severson* was that the idea of the sentencing package concept was altered. We did not say the concept was eliminated. More recently, in fact, we have required resentencing on all counts. For instance, in *United States v. Johnson*, 46 F.3d 636 (7th Cir.1995), we vacated an enhancement for physically restraining a victim but remanded the entire sentence, inviting the district court to consider an upward departure. In the face of vacated § 924(c) convictions we have remanded "for resentencing on all counts so that the district court can 'reconsider its plan as a whole in sentencing.'" *United States v. Thomas*, 86 F.3d 647 (7th Cir.), *cert. denied sub nom., Story v. United States*, — U.S. —, 117 S.Ct. 392, 136 L.Ed.2d 307 (1996).

Under the guidelines it is possible in some cases for us to reverse and remand on certain issues and yet not unbundle the package. In other cases our action may likely undermine the entire sentencing intent of the district judge. In the latter cases, full resentencing is appropriate.

In Smith's case, and in most cases involving the mandatory consecutive 5–year § 924(c) sentence, vacating that portion of the sentence radically changes the sentencing package. If a mandatory sentence for using or carrying a gun is imposed, the oth-

erwise available enhancement for possession of a firearm is not invoked. But if the mandatory sentence is set aside, nothing should prevent the imposition of the enhancement. In that sense, the idea of the "sentencing package" remains a perfectly viable concept.

■ Smith's situation presents yet two more wrinkles. The first is that Chief Judge Gilbert did not merely impose the enhancement for possession of the firearm, he also corrected an improper calculation of the base offense level in the original sentence. He reevaluated the proper offense level; it had been level 12 and as reassessed it came up a 14. Then with the enhancement for the firearm it went to level 18, making the range from 27 to 33 months, rather than the original 10 to 16 months. What Chief Judge Gilbert did is what judges have done over and over again; i.e., try to reach what the judge considers a correct and appropriate sentence. To do so, however, the judge had to—and did—operate within the guidelines. It would be silly, we think, to say that a judge, noting an incorrect base offense in an original sentence in a situation like this, is powerless to correct the error.

■ The second wrinkle Smith presents is the one which brings us to his double jeopardy argument. At the time his § 924(c) count was vacated Smith had served his time on the other counts under the original sentence. Does this mean he cannot be resentenced on those counts? Or is there enough life left in the concept of the sentencing package to allow it? We think the answer to this question, in this case, is "yes."

■ The judgment states that "[t]he defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of Seventy Six (76) months." It is one unified term of imprisonment. When there is an alteration in the components of a sentence, the entire sentence is altered. If the alteration contains within itself potential for permeating the whole sentence, the entire sentence can be revisited. Such is the case here. Setting aside the § 924(c) count opens the possibility of a firearms enhancement. We find that

until action is taken in regard to the whole sentence, Smith did not have an expectation of finality with regard to his sentence. Chief Judge Gilbert acted within his authority and the Double Jeopardy Clause was not violated. A court may increase a sentence on an unchallenged count without violating the Double Jeopardy Clause so long as the new sentence is lawful. *Bentley*; *Pennsylvania v. Goldhammer*, 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985); *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). Although Smith, as we noted when we quoted him earlier in this opinion, is unhappy and thinks "the whole resentencing is unfair to me," he should think again. Had he been into the 75th month of his 76–month sentence on December 6, 1995, when *Bailey* was decided, he would have a legitimate, but uncorrectable, beef. As it worked out, *Bailey* cut his term from 76 months to 33. Most defendants would be happy to be treated that unfairly.

Smith's sentence of 33 months is AF-FIRMED.