UNITED STATES of America, Plaintiff–Appellee,

v.

Shawn L. BINFORD, Defendant–Appellant.

No. 96–2419.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1996.

Decided March 4, 1997.

Randy G. Massey (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Renee E. Schooley (argued), Office of the Federal Public Defender, East St. Louis, IL, for Defendant–Appellant.

Before BAUER, COFFEY, and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

Defendant-appellant Shawn L. Binford initially received two consecutive prison sentences—60 months for a drug conspiracy conviction and 60 months for a firearm conviction. Following the Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995),[1] Binford successfully petitioned the district court under 28 U.S.C. § 2255 to vacate his firearm conviction. At resentencing, the district court applied a two-level enhancement to Binford's offense level for the drug conspiracy charge to reflect that Binford possessed a firearm during a drug-trafficking offense. Binford ended up with a 70–month prison sentence. Binford appeals his recalculated prison sentence on two bases. First, Binford challenges his criminal history category. Second, he contends that it was improper for the district court to resentence him on a count not attacked in his § 2255 petition. For the reasons stated below, we affirm.

## I. BACKGROUND

From November 1993 until January 4, 1994, Binford was part of a conspiracy to distribute crack cocaine. The conspiracy operated out of the house located at 52 Laura Lee in Cahokia, Illinois. After conducting a series of controlled purchases of crack cocaine, deputies of the St. Clair County Sheriff's Department executed a search warrant at the Laura Lee residence. Binford was present during the search. The deputies recovered 10.4 grams of crack cocaine and six handguns.

In a written statement to the St. Clair County Sheriff's Department, Binford admitted to participating in the conspiracy. He

---

1. In *Bailey,* the Supreme Court held that 18 U.S.C. § 924(c) requires evidence sufficient to show *active employment* of a firearm by a defendant during and in relation to a predicate of- fense. *Bailey,* —— U.S. at ——, 116 S.Ct. at 505. This significantly narrowed the scope of firearm activity that had previously qualified as "use" under § 924(c).

stated that he sold crack cocaine from the Laura Lee residence on a few occasions. Binford also admitted that he kept a gun in his possession for protection whenever he was at the Laura Lee residence selling crack cocaine.

On February 24, 1994, a federal grand jury sitting in East St. Louis, Illinois returned a three-count superseding indictment charging Binford with conspiracy to distribute and to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1), possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 2), and using or carrying a firearm during and in relation to a drug-trafficking offense in violation of 18 U.S.C. § 924(c) (Count 3). On February 28, 1994, Binford pleaded guilty to Counts 1 and 3. Count 2 was dismissed as part of the plea agreement.

On May 6, 1994, the district court sentenced Binford to 60 months' imprisonment on Count 1. Binford's offense level was 24, with a criminal history category of II, which produced a guideline range of 57 to 71 months' imprisonment with a statutory minimum of 60 months. In calculating his criminal history category, the court included a 1993 conviction for illegal transportation of alcohol by a driver. The court also sentenced Binford to a consecutive term of 60 months' imprisonment on Count 3, pursuant to 18 U.S.C. § 924(c). Binford did not file a direct appeal.

On January 19, 1996, Binford filed a motion, pursuant to 28 U.S.C. § 2255, asking the district court to vacate his conviction on Count 3 in light of the Supreme Court's recent decision in *Bailey*. The Government conceded the merits of Binford's motion, but moved for a two-level enhancement of Binford's sentence on Count 1, pursuant to U.S.S.G. § 2D1.1(b)(1), to reflect his possession of a firearm during a drug-trafficking offense. The district court granted both parties' motions. The court vacated Binford's gun conviction, but at resentencing, applied a two-level enhancement to his offense level on the drug count. The court again included Binford's prior conviction for illegal transportation of alcohol in determining his criminal history category. The result was a new guideline range of 70 to 87 months. The district court sentenced Binford to 70 months' imprisonment.

Binford appeals his recalculated sentence. First, Binford argues that the district court erred in determining that his prior conviction for illegal transportation of alcohol was not an excludable conviction under the Sentencing Guidelines. Second, Binford contends that by resentencing him on a count that he did not specifically attack in his § 2255 petition, the district court exceeded the scope of its jurisdiction and violated the Double Jeopardy Clause.

## II. ANALYSIS

### A. Calculation of Criminal History

The guidelines require the sentencing court to add one criminal history point for each prior sentence that is not otherwise counted in the guideline sections dealing with sentences of at least 60 days' imprisonment. *See* U.S.S.G. § 4A1.1(c). In 1993, Binford was convicted in Sangamon County of illegal transportation of alcohol by a driver, for which he received one year of court supervision. This prior offense gave him one criminal history point. Because Binford committed the drug-trafficking offenses at issue in this case while on supervision for the prior offense, the district court added two additional points. *See* U.S.S.G. § 4A1.1(d). The three criminal history points together resulted in a criminal history category of II.

Binford asserts that his sentence for illegal transportation of alcohol falls within the ambit of § 4A1.2(c)(1) of the guidelines, which excludes misdemeanor and petty offenses in criminal history calculations under certain conditions. Section 4A1.2(c)(1) provides:

> (c) *Sentences Counted and Excluded*
>
> Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows:
>
> (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known,

are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:

Careless or reckless driving

Contempt of court

Disorderly conduct or disturbing the peace

Driving without a license or with a revoked or suspended license

False information to a police officer

Fish or game violations

Gambling

Hindering or failure to obey a police officer

Insufficient funds check

Leaving the scene of an accident

Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law)

Non-support

Prostitution

Resisting Arrest

Trespassing

Under the relevant provisions of this section, Binford's prior sentence is excludable if the offense of illegal transportation of alcohol is "similar to" any of the listed offenses, and then only if Binford's sentence for that conviction was not equivalent to at least one year of probation.

■ The district court included Binford's prior offense "because of the dissimilarity [between the offense of illegal transportation of alcohol and the offenses listed in § 4A1.2(c)(1) ] and because of the serious nature of that act in 1993." We review the district court's interpretation of the scope of the guidelines *de novo* and its factual findings for clear error. *United States v. Linnear*, 40 F.3d 215, 218 (7th Cir.1994).

Any suggestion that illegal transportation of alcohol is "similar to" the listed offenses appears dubious. Binford does not even point to any specific offense listed in § 4A1.2(c)(1) that he believes is "similar to" his prior offense. Instead, Binford submits, citing *United States v. Caputo*, 978 F.2d 972, 977 (7th Cir.1992), that a defendant's prior misdemeanor conviction is "similar to" a listed offense if it is not "categorically more serious" than the listed offense. Binford then directs us to *United States v. Booker*, 71 F.3d 685 (7th Cir.1995). In *Booker*, we looked to the multi-factored analyses adopted by the Fifth and Ninth Circuits for guidance in determining that the offense of criminal damage to property was not "categorically more serious" than the offense of disorderly conduct. *Id.* at 689–91. Binford contends that had the district court considered the factors discussed in *Booker*, such as the seriousness of the penalty imposed for his prior offense, the likelihood of his recurring criminal conduct, and the seriousness of his prior offense as compared to the offenses listed in § 4A1.2(c)(1), the court would have concluded that his prior conviction for illegal transportation of alcohol is not "categorically more serious" than, and hence is "similar to," a number of the listed offenses.

We do not read *Caputo* and *Booker* as mandating any type of formal analysis for determining whether a defendant's prior offense is "similar to" an offense listed in § 4A1.2(c)(1). In *Booker*, we explicitly noted that "our court has not adopted formally any [analytical approach]." *Booker*, 71 F.3d at 689. Moreover, in *Caputo* and *Booker*, the defendants each made colorable arguments that their respective prior offenses resembled at least one of the offenses listed in § 4A1.2(c)(1). At that point, it made sense to delve into a more in-depth analysis of the offenses' similarity. Binford has failed to make an initial viable argument that illegal transportation of alcohol is similar to (giving "similar" its normal meaning) any of the listed offenses. For that reason, it is unnecessary to analyze the issue of similarity any further.

Assuming *arguendo* that Binford's misdemeanor is "similar to" one of the offenses listed in § 4A1.2(c)(1), our inquiry would not end there. Under part (A) of § 4A1.2(c)(1), a sentence for such offenses is counted if it was for a term of probation of at least one year. The district court did not address

whether a sentence of court supervision should be treated the same as a sentence of probation for purposes of § 4A1.2(c)(1), and no appellate court has yet supplied any guidance on the issue. Today, we supply that guidance.

The Government urges that supervision should be equated with probation, citing *Caputo*. In *Caputo*, we held that conditional discharge was equal to probation for purposes of § 4A1.2(c)(1). *Caputo*, 978 F.2d at 977. Binford argues that *Caputo* is inapposite because, under Illinois law, conditional discharge and court supervision are two distinct statutory creatures. Binford points out that conditional discharge and probation are specifically listed as possible dispositions available to an Illinois sentencing court, while supervision is not. *See* 730 ILL.COMP.STAT. 5/5–5–3 (West 1992). Binford also argues that, under Illinois law, supervision is a penalty ordered *in lieu* of probation or conditional discharge. *See* 730 ILL.COMP.STAT. 5/5–6–1(c) (West 1992). He deduces that supervision and probation are dissimilar in nature and perhaps even suggests that supervision is not a sentence under Illinois law.

■ Supervision *is* a sentence for purposes of § 4A1.2(c)(1). Section 4A1.2(a) defines what constitutes a prior sentence for criminal history purposes. Section 4A1.2(a)(3) provides that "[a] conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under § 4A1.1(c)." It follows then that a disposition of court supervision, which has the effect of suspending sentence under Illinois law, falls within the scope of § 4A1.2(a)(3). Hence, Binford's suggestion that supervision is not a prior sentence under the guidelines "is answered by the Guidelines themselves." *United States v. Johnson*, 43 F.3d 1211, 1214 (8th Cir.1995).

As for whether supervision falls within the meaning of "probation" under § 4A1.2(c)(1), there are, obviously, distinctions between probation, conditional discharge, and supervision. However, they are distinctions without a difference for purposes of § 4A1.2(c)(1). Under Illinois law, a court generally may choose among three "punishments" other than imprisonment when sentencing a convicted defendant. A court may order probation, conditional discharge, or supervision. We define each in turn.

Probation means that the convicted defendant "is not incarcerated but must comply with various conditions set by the sentencing court and monitored by a probation officer, such as periodic reporting, keeping out of trouble, and keeping clean of drugs." *Caputo*, 978 F.2d at 976; *see also* 730 ILL.COMP. STAT. 5/5–1–18 (West 1992) (defining probation as "a sentence or disposition of conditional and revocable release under the supervision of a probation officer"). Conditional discharge is "a sentence or disposition of conditional and revocable release without probationary supervision but under such conditions as may be imposed by the court." 730 ILL.COMP.STAT. 5/5–1–4 (West 1992). Supervision is "a disposition of conditional and revocable release without probationary supervision, but under such conditions and reporting requirements as are imposed by the court, at the successful conclusion of which disposition the defendant is discharged and a judgment dismissing the charges is entered." 730 ILL.COMP.STAT. 5/5–1–21 (West 1992).

These definitions indicate that supervision is the functional equivalent of conditional discharge, which we previously have held to be the functional equivalent of probation. The bottom line is that probation, conditional discharge and supervision all allow a convicted defendant to stay out of prison so long as he stays out of trouble. In *Caputo*, we observed that the only distinction between sentences of formal probation and conditional discharge under Illinois law is that in the former, the defendant is monitored by a probation officer, while in the latter, he is not. *Caputo*, 978 F.2d at 976. We concluded that, insofar as the purposes of the guidelines are concerned, that difference is irrelevant. *Id.* at 977. There is likewise no relevant difference between conditional discharge and supervision. They both are conditional releases for which the sentencing court may impose appropriate restrictions or requirements. The only difference between conditional discharge and supervision is that the charges against a convicted defendant on supervision may ulti-

mately be dismissed. This is of no consequence for purposes of § 4A1.2(c)(1).

In summary, Binford's prior sentence for the illegal transportation of alcohol is includable in calculating his criminal history category. Binford has not shown that the offense is "similar to" any of the offenses listed in § 4A1.2(c)(1). Even if Binford could pass this threshold, the sentence would be includable under part (A) because Binford received the equivalent of a one-year sentence of probation.

## B. Resentencing

■ In order to better understand the nature of Binford's objection to resentencing, we first briefly examine the relationship between 18 U.S.C. § 924(c) and U.S.S.G. § 2D1.1(b)(1). Section 924(c) imposes an additional five years' imprisonment on a person using or carrying a firearm during or in relation to any crime of violence or drug trafficking. 18 U.S.C. § 924(c). Section 2D1.1(b)(1) provides for an increase in a defendant's offense level for certain drug-trafficking offenses "[i]f a dangerous weapon (including a firearm) was possessed" during the offense. U.S.S.G. § 2D1.1(b)(1). Either provision may lengthen a defendant's term of incarceration, but the combination of the two provisions in the same sentence constitutes "double counting," which is prohibited by the guidelines. See U.S.S.G. § 2K2.4 background; United States v. Jackson, 103 F.3d 561, 569 (7th Cir.1996). Binford's § 924(c) conviction therefore precluded the district court from applying a two-point enhancement to his offense level during the first round of sentencing. On collateral review, however, the district court reversed Binford's § 924(c) conviction in light of Bailey, thereby opening the door for the Government to pursue the § 2D1.1(b)(1) enhancement. Binford maintains that, regardless of the fact that there was no longer a "double counting" barrier, the district court had no jurisdiction to resentence him on Count 1.

Where a prisoner's sentence is shown to be illegal, 28 U.S.C. § 2255 confers upon the court the remedial authority to "set aside or correct the sentence." 28 U.S.C. § 2255 (emphasis added). The scope of the court's authority to resentence depends on what is meant by the word "sentence." If "sentence" is read narrowly to refer to the specific term of imprisonment associated with a single count of conviction, a § 2255 motion that successfully attacks a § 924(c) conviction would confer jurisdiction only over the sentence associated with that conviction and nothing else. On the other hand, if "sentence" is construed more broadly as referring to an aggregate, indivisible term of imprisonment, the district court would have jurisdiction over the sentence as to all counts of conviction. This Court, the first appellate court to address the issue, recently endorsed the latter interpretation. In United States v. Smith, 103 F.3d 531 (7th Cir.1996), we concluded that, in a § 2255 proceeding, the district court has the authority to restructure a defendant's entire sentence even when the prisoner's petition attacks the validity of just one of the counts of conviction.

Central to the decision in Smith was the "sentencing package" concept. A sentencing package is "the bottom line, the total number of years (or under the guidelines, months) which effectuates a sentencing plan." Id. at 533. The image of the package reflects the likelihood that in sentencing a defendant who is convicted of more than one count of a multicount indictment, the district judge imposes an overall punishment which takes into account the nature of the crime, certain characteristics of the criminal, and the interdependence of the individual counts. United States v. Shue, 825 F.2d 1111, 1114 (7th Cir.), cert. denied, 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987); see also United States v. Pimienta–Redondo, 874 F.2d 9, 14 (1st Cir.), cert. denied, 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989).

As will happen with any type of package, a sentencing package may become "unbundled." When a sentencing package is unbundled, such as when part of a sentence is vacated, we have held that, in order to effectuate its original sentencing intent, the district court may "rebundle" the package by resentencing the defendant. See, e.g., Shue, 825 F.2d at 1114.

Until this Court's decision in Smith, rebundling cases all have arisen on direct appeal,

*see, e.g., id.,* or under Rule 35 of the Federal Rules of Criminal Procedure, *see, e.g., United States v. Bentley,* 850 F.2d 327 (7th Cir.), *cert. denied,* 488 U.S. 970, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988). In the instant case, the district court rebundled Binford's sentence on a § 2255 petition. Does this make a difference? This Court already has decided that it does not. The sentencing package concept is just as applicable in the collateral attack context as it is in the direct appeal context. In *Smith,* we explained:

> If a multicount sentence is a package—and we think it is—then severing part of the total sentence usually will unbundle it. And we do not think it matters what means are used to bring resentencing proceedings before the district court. Under the sentencing package concept, when a defendant raises a sentencing issue he attacks the bottom line. That Smith's case came before the district court pursuant to a § 2255 petition, rather than a remand from us or by some other means, does not change that fact.

*Smith,* 103 F.3d at 534.

Bearing in mind the "either/or" relationship between § 924(c) and § 2D1.1(b)(1), Binford's original sentence was indeed a sentencing package—the § 924(c) conviction prevented the court from applying the § 2D1.1(b)(1) enhancement. We presume the district court intended that some part of Binford's sentence reflect the fact that Binford possessed a firearm during the commission of a drug offense. It follows, then, that vacatur of the § 924(c) portion of Binford's sentence unbundled his sentencing package and entitled the district court to effectuate its original sentencing intent by resentencing Binford and adding an enhancement to his offense level on Count 1.

As for the constitutional dimension of Binford's objection to resentencing, Binford contends that he had a legitimate expectation of finality in his 60–month sentence on Count 1 because his § 2255 petition did not challenge his conviction on that count. By enhancing his offense level on Count 1, Binford's argument continues, the district court increased his penalty in violation of the Double Jeopardy Clause.

In *Smith,* this Court found that because the district court imposed a sentencing package, (as it necessarily does when a § 924(c) conviction prevents a § 2D1.1(b)(1) enhancement), the defendant was precluded from having an expectation of finality in his sentence regardless of what he included in his § 2255 petition. We explained:

> When there is an alteration in the components of a sentence, the entire sentence is altered. If the alteration contains within itself potential for permeating the whole sentence, the entire sentence can be revisited. Such is the case here. Setting aside the § 924(c) count opens the possibility of a firearms enhancement. We find that until action is taken in regard to the whole sentence, Smith did not have an expectation of finality with regard to his sentence.

*Smith,* 103 F.3d at 535. The sentencing package concept likewise defeats Binford's double jeopardy claim.

There being no facts in dispute as to whether Binford possessed a firearm during a drug-trafficking offense, we affirm Binford's recalculated 70–month prison sentence. We reach this result, however, with some apprehension. The sentencing package concept and our prior cases which rely on it compel our conclusion in this case that the district court did not transgress any jurisdictional or constitutional boundaries by resentencing Binford and enhancing his offense level on Count 1. These precedential cases show that our analyses of resentencing issues increasingly have become exercises in semantics rather than discussions of traditional notions of constitutional law. It strikes us as odd that a district court may so easily circumvent the Double Jeopardy Clause (in a § 2255 proceeding, no less, which is a remedy *exclusive* to prisoners). "The theory of double jeopardy is that a person need run the gantlet only once. The gantlet is the risk of the range of punishment which the State or Federal Government imposes for that particular conduct.... He risks the maximum permissible punishment when first tried. That risk having been faced once need not be faced again." *North Carolina v. Pearce,* 395 U.S. 711, 727, 89 S.Ct. 2072, 2089, 23 L.Ed.2d 656 (1969) (Douglas, J., concurring). Al-

though we concluded in *Smith* that there is "enough life left in the concept of the sentencing package" (*Smith,* 103 F.3d at 535) to permit resentencing on unchallenged counts of a multicount conviction on a § 2255 petition, we believe we have stretched the conceptual fiction of the sentencing package to its limit.

## III. CONCLUSION

For the foregoing reasons, the district court's entry of Binford's recalculated 70–month prison sentence on Count 1 is AFFIRMED.